UNITED STATES of America, Plaintiff,

v.

Lexie Lee SMITH, Jr., aka "Lex," aka "Fresh Lex," aka "Fresh," Lester Ervin Smith, Jr., aka "Dink," aka "Les," aka "Mike Harris," aka "Ronell Harris," aka "Michael J. Harris," Lori Smith, aka "Laurie Smith," Edward Tyrone Merritt, James Wardel Quary, aka "Z," aka "Zulu," aka "Zado," Defendants.

Nos. 95–40083–03–SAC, 95–40083–04–SAC and 95–40083–06–SAC to 95–40083–08–SAC.

United States District Court, D. Kansas.

Aug. 30, 1996.

Gregory G. Hough, Office of United States Attorney, Topeka, KS, for U.S.

James G. Chappas, Jr., Topeka, KS, for defendant Lexie Lee Smith, Jr.

Lexie Lee Smith, Jr., Emporia, KS, pro se.

Joseph D. Johnson, Topeka, KS, for defendant Lester Ervin Smith, Jr.

Michael M. Jackson, Topeka, KS, for defendant Lori Smith.

Lori Smith, Topeka, KS, pro se.

F.G. Manzanares, Topeka, KS, Steven D. Rosel, Topeka, KS, for defendant Edward Tyrone Merritt.

Alan G. Warner, Warner, Bixler & Associates, L.L.C., Topeka, KS, for defendant James Wardell Quary.

## MEMORANDUM AND ORDER

CROW, District Judge.

On February 1, 1996, the grand jury returned a sixty-eight page, seventy-nine count superseding indictment charging the defendants as follows:

Count 1:

Conspiracy to possess with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 846, with reference to 21 U.S.C. § 812, 21 U.S.C.

§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2.

Counts 2, 4, 5, 7, 9, 12, 16, 17, 21, 40 and 78:

Possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), with reference to 21 U.S.C. § 846, 21 U.S.C. § 812, and 21 U.S.C. § (b)(1)(C), and 18 U.S.C. § 2.

Counts 3, 6, 8, 10 and 13:

Maintaining a building or room for the purpose of unlawfully storing cocaine base in violation of 21 U.S.C. § 856.

Counts 11, 14, 15, 18–20, 22, 23, 25–27, 29–31, 33–35, 37–39, 41–44, 46–48, 50–56, 58–62, 65–68, 72, 76 and 77:

Using a communication facility in committing, causing and facilitating a drug trafficking crime in violation of 21 U.S.C. § 843(b).

Counts 17, 24, 28, 32, 36, 40, 45, 49, 57, 63, 64, 69, 71, 73 and 75:

Possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), with reference to 21 U.S.C. § 846, 21 U.S.C. § 812, and 21 U.S.C. § (b)(1)(B), and 18 U.S.C. § 2.

Counts 70, 74 and 79:

Acquiring and possessing food stamp coupons in a manner not authorized, constituting a violation of 7 U.S.C. § 2024(b).

Since the time the indictment was filed, three defendants, Demond Bridges, Elinor Preston, and Bernard Preston, have entered guilty pleas pursuant to plea agreements.

On April 5, 1996, this court entered a seventy page memorandum and order ruling on the then-pending pretrial motions filed by the defendants. *See United States v. Preston,* 1996 WL 254379 (D.Kan. April 5, 1996). Since the time that memorandum and order was filed, the grand jury has returned a second and a third superseding indictment. The third superseding indictment adds two defendants, Edward Tyrone Merritt and James Wardel Quary. In addition, the third superseding indictment adds the following charges:

Count 80: Possession with intent to distribute crack cocaine [All defendants]

Count 81: Felon in possession of a firearm [Edward Merritt]

Count 82: Carrying and/or using a firearm during and in relation to drug trafficking crimes [All defendants]

This case comes before the court upon the following pretrial motions filed by the defendants:

**Lexie Lee Smith, Jr. (represented by James G. Chappas):**

1. Motion for Bill of Particulars (Dk. 298).

2. Motion for disclosure of confidential informant(s) and incorporated memorandum of law (Dk. 299).

3. Motion for severance (Dk. 244);[1] Motion for severance (Dk. 300).

4. Motion to strike surplusage from indictment (Dk. 302).

5. Motion for discovery and inspection (Dk. 303).

6. Motion for grand jury transcript (Dk. 304).

7. Standing Objection to Continuance Motions (Dk. 305); Standing objections to any continuance in the case and to any further superseding of indictment (Dk. 243).

8. Motion pursuant to F.R.E. Rule 803(24) (Dk. 306).

9. Motion to compel retention of notes, logs, recordings, reports and statements of government agents (Dk. 307).

10. Motion for *James* hearing (Dk. 308).

11. Motion for disclosure of information regarding prior or subsequent bad acts (Dk. 309).

12. Motion for grand jury selection information (Dk. 310).

13. Motion to compel the disclosure of existence and substance of promises of immunity, leniency or preferential treatment (Dk. 311).

---

1. This motion was filed after the second superseding indictment was returned by the grand jury.

14. Motion to quash third superseding indictment count 82 (Dk. 312).

15. Motion in limine to exclude use of audio tapes and transcripts (Dk. 297).[2]

16. Motion to quash counts 22, 23 and 24 of the second superseding indictment (Dk. 241).[3]

17. Adoption of previously filed pre-trial motions (Dk. 242).[4]

18. Motion to compel discovery (Dk. 195).[5]

19. Motion to quash government's consolidated responses to defendant's pretrial motions (Dk. 328).[6]

**Lester Ervin Smith, Jr. (represented by Joseph D. Johnson):**

1. Motion to sever (Dk. 323).

2. Motion to join in responses [to government's motion to compel discovery] (Dk. 208).

3. Motion for continuance of trial (Dk. 330).

**Lori Smith (represented by Michael M. Jackson):**

1. Motion for extension of time to file pretrial motions (Dk. 284).[7]

**Edward Tyrone Merritt (represented by Steven D. Rosel):**

1. Motion to join and adopt (Dk. 239).

2. Motion dismiss count (Dk. 259).

3. Motion for evidentiary hearing (Dk. 272).

**James Wardel Quary (represented by Alan G. Warner):**

1. Motion to Adopt and Conform (Dk. 285).

**Other Motions Previously Taken Under Advisement:**

Dk. 144 [Motion in Limine to Exclude Tapes], Dk. 153 [Motion for daily Transcript], and Dk. 154 [Lori Smith's first motion in limine]. *See Preston,* 1996 WL 254379 (D.Kan. April 5, 1996 (Dk. 178)).

The government has filed a consolidated response to the defendants' motions (Dk. 326). The government also responded to Lexie Smith's "Motion to compel discovery (Dk. 195) in a pleading titled "Government's response to defendant's motion to compel discovery" (Dk. 200).

**Government's Motion:**

1. Motion to compel discovery (Dk. 167)

**Defendants' Responses:**

1. Defendant's [Lexie Smith's] Response to Government's motion to compel discovery (Dk. 231).

2. Lori Smith's response to government's motion to compel discovery (Dk. 180).

3. Lester Smith's "Motion to join responses" of other defendant's to government's motion to compel discovery (Dk. 208).

On August 27, 1996, the court conducted a hearing to consider the defendants' pretrial motions. The court, having considered the briefs and arguments of counsel, the evidence presented, and the applicable law, is now prepared to rule.

### Overview

Several of the motions filed by Lexie Lee Smith, Jr., are identical or virtually identical to the motions previously decided by the court in its April 5, 1996, memorandum and order. So that the record is clear, the court considers all of the previous motions filed by all of the defendants in this case to apply, to the extent applicable, to the third superseding indictment. The court, reconsidering its prior rulings, rules in the same manner on the following motions:

---

**2.** This motion is identical in substance to the "Motion in limine to exclude use of tapes (Dk. 144)" filed by Lester Smith.

**3.** This motion is moot in light of the grand jury's return of a third superseding indictment which corrects the omissions challenged by the defendant in this motion.

**4.** This motion is granted as set forth in the body of this opinion.

**5.** This motion is moot in light of the government's response in (Dk. 200).

**6.** This motion is denied.

**7.** This motion is moot in light of the fact that the magistrate judge set times for filing pretrial motions after the third superseding indictment.

1. Motion for Bill of Particulars (Dk. 298).

2. Motion for disclosure of confidential informant(s) and incorporated memorandum of law (Dk. 299).[8]

6. Motion for grand jury transcript (Dk. 304).

8. Motion pursuant to F.R.E. Rule 803(24) (Dk. 306).

10. Motion for *James* hearing (Dk. 308).

11. Motion for disclosure of information regarding prior or subsequent bad acts (Dk. 309).

12. Motion for grand jury selection information (Dk. 310).

All of these motions are denied as moot in light of the court's previous rulings.

15. Motion in limine to exclude use of audio tapes and transcripts (Dk. 297).[9]

This motion is taken under advisement until the time of trial.

## Motion to Adopt and Conform (Dk. 285 and 239):

Quary seeks to "adopt and conform" to all of the pretrial motions filed by codefendants "which may be applicable and beneficial" to him. Similarly, Merritt seeks to join in and adopt all of the pretrial motions which are beneficial to him. The government opposes the motion as each defendant does not articulate how the motion filed by codefendants is applicable to his respective position.

The defendants' motions are granted subject to the conditions imposed by this court's Criminal Procedural Guidelines. *See* I.C. ("A motion to join another party's motion will be granted only upon the following conditions. The joining party will not be allowed to raise any legal or factual arguments that are additional to or different from those

found in the original motion, unless they are advanced in the motion to join. Issues, such as prejudice, standing, fairness, or need, that are unique to the party seeking to join must be made in the written motion to join or the court will deem them to have been waived.").

## Motions for severance (Dks. 244, 300 and 323):

The defendants again seek severance from the other defendants. The defendants primarily argue that the jury will find them guilty by association and that the volume of evidence against other defendants will prevent each other defendant from receiving a fair trial as the jury will be unable to compartmentalize the evidence. Lester Smith requests that counts 80, 81 and 82 be severed, or in the alternative that he receive a separate trial on all counts. Because count 81 charges Edward Merritt only with felon in possession with a firearm, the defendants contend that the inclusion of Count 81 will result in unfair prejudice to their own case. The defendants also contend that certain codefendants have made extrajudicial statements that inculpate other defendants, causing a *Bruton* problem.

As to counts 80–82, Lester Smith contends that he was incarcerated and therefore could not have participated in the events charged in those counts. During oral argument, Smith also argued that severance was particularly appropriate in his case as, based upon his limited or minimal participation, if any, in the alleged conspiracy, he intends to pursue a withdrawal defense.

■ In large part, the court's April 5, 1996, memorandum and order addresses all of the arguments advanced in these motions to sever.[10] In regard to the additional counts

---

8. This motion is substantively identical to the "Motion for Disclosure of Confidential Informant (Dk. 96)" filed by Demond Wesley Bridges.

9. This motion is identical in substance to the "Motion in limine to exclude use of tapes (Dk. 144)" filed by Lester Smith. The court again assumes that counsel for the government and counsel for the defendant can work together to identify the tapes and transcripts in a manner enabling counsel for the defense to review the tapes in a meaningful fashion.

10. In this motion, Lester Smith asserts that he is entitled to a severance because another codefendant who is joined in this trial may offer exculpatory evidence. Pages 14–15 of the court's April 5, 1996, memorandum and order sets forth the factors the Tenth Circuit suggests that the court consider in evaluating a claim to sever based on exculpatory evidence. Considering those factors, the court concludes that Lester Smith fails to demonstrate that severance is necessary or appropriate. Lester Smith indicates that the person who may offer exculpatory evi-

added in the third superseding indictment, the court will instruct the jury to consider each and every count in the third superseding indictment as if it were a separate offense charged in a separate superseding indictment and that the rights of each of the defendants in this case are separate and distinct, and an independent verdict must be brought in as to each of them. The court will also instruct the jury that each defendant is entitled to have his guilt or innocence as to the crime charged determined from his own conduct and from the evidence that applies to him as if he were being tried alone, and you should give separate consideration to each defendant. Nothing in the additional counts is so uniquely prejudicial as to cause the court to believe that the jury cannot follow these instructions.

■ In regard to the fact that Lester Smith may have been incarcerated during the time Counts 80–82 are alleged to have been committed, the court simply notes that such a fact would not necessarily preclude his criminal liability as either an aider or abettor or under a *Pinkerton* theory of liability.

■ Lester Smith's indication that he seeks to pursue a withdrawal defense does not change the court's prior analysis of his need for severance. "In order to withdraw from a conspiracy an individual must take affirmative action, either by reporting to the authorities or by communicating his intentions to the coconspirators." *United States v. Powell*, 982 F.2d 1422, 1435 (10th Cir.1992) (citing *United States v. Parnell*, 581 F.2d 1374, 1384 (10th Cir.1978), *cert. denied*, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979)), *cert. denied*, 508 U.S. 917, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). Nothing articulated by Lester Smith convinces the court that his withdrawal defense is precluded or otherwise hampered by trying his case with his alleged coconspirators.

The defendants' motions for severance are denied.

**Motion to strike surplusage from indictment (Dk. 302):**

Lexie Smith seeks to strike the phrase "crack" or "crack cocaine" from wherever it appears in the third superseding indictment. Lexie Smith also seeks to strike the words "was found guilty on his plea to conspiracy to distribute controlled dangerous substance, possession of cocaine with intent to distribute, and weapon use in commission of crime ..." as contained in Count 81 of the third superseding indictment. Lexie Smith contends that the phrase "crack" is not taken from the language of the statute and is not necessary to prosecute the crimes alleged in the third superseding indictment. Lexie Smith contends that the phrases are only included to elicit prejudice and should be stricken under Fed.R.Crim.P. 7(d) as immaterial and irrelevant. As to the language in count 81, although only Merritt is charged in Count 81, Smith contends that the inclusion of the description of the crimes of which Merritt has been convicted is unnecessary and prejudicial.

The government responds, arguing that the phrase "crack cocaine" is simply the common phrase used to describe "cocaine base." The government argues that only Merritt has standing to challenge the reference to the specific nature of his prior felony convictions. The government notes, however, that the Tenth Circuit, in *United States v. Wacker*, 72 F.3d 1453, 1472–73 (10th Cir.1996), *petition for certiorari filed* June 10, 1996, held that "where a defendant offers to stipulate as to the existence of a prior felony conviction, the trial judge should permit that stipulation to go to the jury as proof of the status element of section 922(g)(1), or provide an alternative procedure whereby the jury is advised of the fact of the former felony, but not its nature or substance."

■ Under Fed.R.Crim.P. 7(d), "[t]he court on motion of the defendant may strike surplusage from the indictment or information." "This rule introduces a means of protecting the defendant against immaterial or

dence is "Mr. Bridges," a codefendant who has already entered a guilty plea. Obviously, "Mr. Bridges" will not be proceeding to trial in this matter, and therefore a severance of Lester

Smith from his remaining codefendants would in no way improve his ability to call "Mr. Bridges" as a witness.

irrelevant allegations in an indictment or information, which may, however, be prejudicial." Notes of Advisory Committee on Rules, 1944 Adoption, Note to Subdivision (d).

> It is held that a motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a rather exacting standard, and only rarely has surplusage been ordered stricken.

1 Charles A. Wright, *Federal Practice and Procedure* § 127 (1982); *see United States v. Scarpa*, 913 F.2d 993, 1013 (2nd Cir.1990) ("Motions to strike surplusage from an indictment will be granted only where the challenged allegations are 'not relevant to the crime charged and are inflammatory and prejudicial.'") (quoting *United States v. Napolitano*, 552 F.Supp. 465, 480 (S.D.N.Y. 1982) (citing authorities)). A motion to strike surplusage is committed to the discretion of the court. 1 *Federal Practice and Procedure* § 127.

 As for the defendant's request to strike the phrases "crack" and "crack cocaine" from the third superseding indictment, it appears that this terminology is relevant and will potentially aid the jury in understanding the crimes charged and the evidence as it is presented. *See United States v. Ailsworth,* 1994 WL 539347 (D.Kan. Aug. 24, 1994) (denying similar motion to strike as surplusage phrases "crack" and "crack cocaine"). In common parlance, the phrases "crack" and "crack cocaine" describe cocaine base. *See, e.g., United States Sentencing Guidelines* § 2D1.1, Note D ("'Cocaine base,' for purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.").

 In regard to Lexie Smith's motion to strike the language from count 81, the court agrees with the government in that Smith cannot reasonably challenge the language contained in that count as it only applies to Merritt. Merritt himself may seek one or more of the alternatives suggested by the Tenth Circuit in *Wacker.*

The defendant's motion to strike surplusage is denied.

**Motion for discovery and inspection (Dk. 303):**

Lexie Smith requests discovery pursuant to Fed.R.Crim.P. 16, *Brady* and Jencks. Smith's motion fails to comply with the procedural guidelines of this court. *See Criminal Procedural Guidelines,* I.B. ("Prior to filing discovery requests or motions with the court based upon constitutional (e.g., *Brady* or *Giglio* ) or statutory grounds (e.g., Federal Rule of Criminal Procedure 16), government counsel and defense counsel shall confer in an attempt to agree on a mutually acceptable pretrial exchange of information and discovery. If an agreement is reached, counsel for both parties shall sign and file with the court a notice or statement of their agreement. If no agreement is reached, a motion for discovery may be filed. The motion shall disclose that counsel conferred and were unable to agree upon production of the requested information. The motion shall be made in compliance with the provisions of the Federal Rules of Criminal Procedure governing motion practice in criminal cases and in compliance with these procedural guidelines. The motion for discovery shall specify with as much certainty as possible the requested information and may be supported by affidavits filed with the motion."). Moreover, the government has repeatedly indicated that this is a full discovery matter. This motion is denied as moot.

**Standing Objection to Continuance Motions (Dk. 305); Standing objections to any continuance in the case and to any further superseding of indictment (Dk. 243):**

Lexie Smith lodges a standing objection to any further continuances in this matter. Lexie Smith also objects to any further superseding of the indictment. The government opposes the defendant's attempt to preemptively foreclose any additional continuances for any reason. The government indicates that the defendant's objection to further superseding of the indictment is absurd.

The court notes Lexie Smith's objection. However, even the Speedy Trial Act specifically excludes certain days—termed excludable time—from the speedy trial calculation. *See* 18 U.S.C. § 3161(h). Neither the defendant's constitutional or statutory right to a speedy trial will be violated in this case.

▮ The government correctly notes that "[a] superseding indictment may be returned at any time before a trial on the merits of an earlier indictment." *United States v. Bowen,* 946 F.2d 734, 736 (10th Cir.1991) (citing *United States v. Herbst,* 565 F.2d 638, 643 (10th Cir.1977)). This portion of the defendant's motion is therefore denied.

**Motion to compel retention of notes, logs, recordings, reports and statements of government agents (Dk. 307):**

Lexie Smith contends that he is entitled to an order requiring government agents to retain their notes, logs, recordings, reports and statements. Lexie Smith's authority is essentially the Jencks Act and *Brady.*

The government responds, arguing that the defendants are not entitled to discovery of these notes as none of the statements of witnesses are substantially verbatim or were statements adopted or approved by the witnesses, and therefore the defendants are not entitled to those documents.

The Jencks Act directs the district court to order the government to produce, upon defense motion, any statement of the witness which relates to the subject matter to which the witness has testified during direct examination. 18 U.S.C. § 3500(b); *see United States v. Vaccaro,* 816 F.2d 443, 452 (9th Cir.), *cert. denied,* 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987). The Jencks Act provides a three-part definition of "statement":

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).

▮ "Interview notes could be 'statements' under the Act [18 U.S.C. § 3500(e)(2) ] if they are substantially verbatim" recitals of a witness's oral statement and are recorded contemporaneously with the interview. *United States v. Smith* 984 F.2d 1084, 1086 (10th Cir.) (citation omitted), *cert. denied,* 510 U.S. 873, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *see United States v. Rewald,* 889 F.2d 836, 867 (9th Cir.1989), *modified on other grounds,* 902 F.2d 18 (9th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990). On the other hand, reports that embody only the agent's " 'epitomization, interpretation, or impression of an interview are not producible....' " *Rewald,* 889 F.2d at 867 (quoting *Ogden v. United States,* 303 F.2d 724, 732 (9th Cir. 1962)). "[T]he task of characterizing the report is for the court, not the government." *Rewald,* 889 F.2d at 867 (citations omitted). Once the defendant makes a prima showing that a statement of the witness exists, the court cannot deny the defendant's request without a hearing or in camera review of the purported statement. *Smith,* 984 F.2d at 1086.

▮ Under 18 U.S.C. § 3500(e)(1), interview notes or reports are also discoverable if they contain a written statement signed, adopted or approved by the government witness. *United States v. Morris,* 957 F.2d 1391, 1401 (7th Cir.), *cert. denied,* 506 U.S. 941, 113 S.Ct. 380, 121 L.Ed.2d 290 (1992). A statement within a report is adopted by the witness if the interview notes are read back to and verified, approved, or acknowledged as true by the witness and the report summarizes the notes without material variation. *United States v. Williams,* 962 F.2d 1218, 1224 (6th Cir.), *cert. denied,* 506 U.S. 892, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992); *see United States v. Boshell,* 952 F.2d 1101, 1104–05 (9th Cir.1991). In short, the witness must have read the entire statement and formally approved it. *United States v. Jackson,* 978 F.2d 903, 909 (5th Cir.1992), *cert. denied,* 508 U.S. 945, 113 S.Ct. 2429, 124

L.Ed.2d 649 (1993). When the defendant claims the statements are producible under Jencks Act, the court must examine in camera the purported statements. *Morris,* 957 F.2d at 1401. The court must focus on "'whether the statement can fairly be deemed to reflect *fully and without distortion the witness's own words.*'" *Id.* (quoting *United States v. Allen,* 798 F.2d 985, 994 (7th Cir.1986)). "[T]he materials should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." *United States v. Bobadilla–Lopez,* 954 F.2d 519, 522 (9th Cir.1992), *cert. denied,* 506 U.S. 1056, 113 S.Ct. 987, 122 L.Ed.2d 139 (1993).

█ Although the government indicates that the agents' notes are not Jencks material, it has not submitted those notes for in camera inspection. Although the defendant has done little more than invoke a "Jencks" request, the court deems it appropriate for the government to submit for in camera inspection the notes taken and the reports made from the interviews of witnesses in this case. *See United States v. Jackson,* 850 F.Supp. 1481, 1508–1509 (D.Kan.1994), *aff'd,* 76 F.3d 1145 (10th Cir.1996). The government shall submit the notes and reports at least ten days prior to trial. The court will inspect the notes and reports and determine if the witnesses adopted the statements for purposes of the Jencks Act. If producible, the notes or report will be furnished to defendants only after direct examination unless the government agrees to an earlier disclosure.

**Motion to compel the disclosure of existence and substance of promises of immunity, leniency or preferential treatment (Dk. 311):**

This motion is moot in light of the government's response that this has been a full discovery matter.

**Motion to quash third superseding indictment count 82 (Dk. 312):**

In full, Count 82 charges:

On or about the 28th Day of November, 1995, in the District of Kansas, the defendants,

LEXIE LEE SMITH, JR., aka "Lex," aka "Fresh Lex," aka "Fresh," LESTER ERVIN SMITH, JR., aka "Dink," aka "Les," aka "Mike Harris," aka "Ronell Harris," aka "Michael J. Harris," LORI SMITH, aka "Laurie Smith," EDWARD TYRONE MERRITT, JAMES WARDEL QUARY, aka "Z," aka "Zulu," aka "Zado,"

knowingly and intentionally used and/or carried a firearm, to wit: a RUGER, 9 millimeter handgun, serial number 302–10445, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, to wit: possession, with the intent to distribute or dispense, a mixture or substance which contained cocaine base or crack cocaine, a Schedule II controlled substance, in violation of Title 21 United States Code, § 841(a)(1), as alleged in Count 1 and/or Count 80 herein. In violation of title 18, United States Code, §§ 924(c)(1) and (2), with reference to Title 21, United States Code, Section 846.

Lexie Smith contends that count 82 is duplicitous in that it charges two separate underlying drug offenses—using or carrying a firearm during and in relation to count one (conspiracy to possess with intent to distribute cocaine base) and/or count 80 (possession with intent to distribute cocaine base). The government responds, arguing that this argument is frivolous, citing *United States v. Richardson,* 86 F.3d 1537 (10th Cir.1996).

### Duplicity [11]

█ Duplicity occurs when two or more separate offenses are joined in the same count. *United States v. Hager,* 969 F.2d 883, 889 (10th Cir.) (citing *United States v. Haddock,* 956 F.2d 1534, 1546 (10th Cir. 1992)), *cert. denied,* 506 U.S. 964, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992). The problem

---

11. In contrast to duplicity, "'[m]ultiplicity refers to multiple counts of an indictment which cover the same criminal behavior.'" *United States v. Fleming,* 19 F.3d 1325, 1330 (10th Cir.) (quoting *United States v. Dashney,* 937 F.2d 532, 540 n. 7 (10th Cir.), *cert. denied,* 502 U.S. 951, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991)), *cert. denied,* —— U.S. ——, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994).

created is that a jury may convict a defendant without unanimously agreeing on the defendant's guilt of the same offense. *Id.*

> One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense. This may conflict with a defendant's Sixth Amendment rights and may also prejudice a subsequent double jeopardy defense. Duplicity may also give rise to problems regarding the admissibility of evidence, including its admissibility against one or more codefendants.

*United States v. Sasser,* 971 F.2d 470, 477 n. 5 (10th Cir.1992) (quoting *United States v. UCO Oil Co.,* 546 F.2d 833, 835 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977)), *cert. denied,* 507 U.S. 924, 113 S.Ct. 1292, 122 L.Ed.2d 683 (1993). *See United States v. McKneely,* 69 F.3d 1067, 1072 (10th Cir.1995) ("Duplicity, the joining of two or more offenses in one count, creates the possibility that the jury may convict the defendant without unanimously agreeing on guilt for the same offense, (citation omitted) and also raises double jeopardy concerns.").

■ "A challenge to an indictment based on duplicity must be raised prior to trial." *United States v. Hager,* 969 F.2d 883, 890 (10th Cir.1992) (citing Fed.R.Crim.P. 12(b)(2); *United States v. Henry,* 504 F.2d 1335, 1338 (10th Cir.1974), *cert. denied,* 421 U.S. 932, 95 S.Ct. 1660, 44 L.Ed.2d 90 (1975)).

### Analysis

Count 82 charges two separate crimes: using and/or carrying a firearm in relation to two separate drug trafficking crimes: conspiracy to possess with the intent to distribute (as charged in Count 1) and/or possession with the intent to distribute (as charged in Count 80). It is clear that Count 82 could have been charged in two separate counts. However, in this district, the grand jury has returned similar § 924(c) charges in other cases. In *United States v. Van Pelt,* No. 92-40042-01. 03-07-SAC, 1993 WL 360329

(D.Kan. Aug. 17, 1993), *aff'd in part, reversed in part based upon the Supreme Court's decision in Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), *United States v. Wacker,* 72 F.3d 1453 (10th Cir.1995),[12] in one count, Count 7, the government charged the defendants with using a firearm during and in relation to two separate drug trafficking crimes. Prior to trial, no defendant argued that such a charge was duplicitous. However, during the instruction conference, the defendants objected to the verdict form which required the jury to indicate the drug trafficking crime(s) in which the firearm was used if they found the defendant guilty of Count 7. Over the objection of the defendants, the verdict form was submitted with the special question.

On appeal one of the defendants argued that the verdict form improperly amended the indictment. The Tenth Circuit rejected that argument:

> Appellant Cooley argues that his conviction on Count 7 of the superseding indictment for using a firearm in relation to a drug trafficking crime must be reversed on the ground that the district court improperly amended the indictment by submitting a nonconforming verdict form to the jury. Although we reverse and remand the trial defendants' conviction on Count 7 in light of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), see supra Part II.A., we address the improper amendment issue insofar as it may be relevant on retrial.
>
> Count 7 of the indictment charged that Cooley and his coconspirators used Edith Wacker's .22 caliber pistol during and in relation to either the conspiracy charged in Count 1 of the indictment or the possession charge as charged in Count 4. The verdict form returned by the jury on Count 7 read as follows:
>
> 5. We, the jury, impaneled and sworn, hereby answer the following question propounded by the Court:

12. The court simply notes that Greg Hough represented the United States in *Wacker* and that

James Chappas represented defendant Cooley in that same case.

896

Do you find the defendant, Leroy Allen Cooley, not guilty or guilty as to count seven of the superseding indictment?

(check one)　　　　　　Not Guilty ＿＿

Guilty _X_

If your answer to question five is "guilty," indicate which crime or crimes you find that the defendant used the firearm during and in relation to:

(check one) ·　　　　　　Count 1 ＿＿

Count 4 ＿＿

Count 1 and Count 4 _X_

(R.O.A. Vol. IV, Doc. 352). Cooley contends that the district court's use of this verdict form constructively amended the indictment by giving the jury an additional choice—that is, it permitted the jury to find that Cooley used the gun in connection with Count 1 and Count 4, whereas the indictment alleged only that he used the gun in connection with Count 1 or Count 4.

Cooley is correct that the Fifth Amendment forbids amendment of an indictment by the court, whether actual or constructive. *United States v. Mosley*, 965 F.2d 906, 915 (10th Cir.1992). However, the Constitution does not forbid all amendments of an indictment, but only those that "effectively subject a defendant to the risk of conviction for an offense that was not originally charged in the indictment." *Id.* We do not believe that the verdict form's slight deviation from the language of the indictment violated Cooley's rights under the Fifth Amendment. Because the jury concluded that Cooley used the firearm in connection with both Counts 1 and 4, the jury clearly found Cooley guilty as charged in Count 7. The verdict form used by the trial court did not expand the scope of the indictment or expose Cooley to additional charges. Accordingly, we reject Cooley's argument that the verdict form improperly amended the indictment.

72 F.3d at 1474–75.

■■■ During oral argument in the case at bar, the court asked the government if the crimes charged in count 82 could have been charged in two separate counts. The government conceded that it could have charged the crimes alleged in count 82 in two separate counts, but argued that doing so would have been an exercise in futility as double jeopardy would, under Tenth Circuit precedent, bar sentencing a defendant on more than one count such as occurred in *United States v. Lipp*, 1993 WL 544572 (D.Kan. Dec. 16, 1993) (memorandum and order providing parties with notice that it intended to vacate one of two § 924(c)(1) counts based upon double jeopardy). The government contended that the jury verdict form can be fashioned in a manner similar to the one given in *United States v. Van Pelt* and thereby eliminate any of the concerns posed by the defendant.

The court believes that the government has misstated the law regarding double jeopardy in this circuit. In *United States v. Parra*, 2 F.3d 1058 (10th Cir.), *cert. denied*, 510 U.S. 1026, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993), the defendant, Sotelo, argued that the district court erred by entering judgment on two separate convictions for use of a firearm during a drug crime. Sotelo argued that it is a violation of the Double Jeopardy Clause to convict a defendant on two separate counts of violating 18 U.S.C. § 924(c)(1) when the defendant has used two separate weapons during a *single* drug offense. The Tenth Circuit agreed:

In *United States v. Henning*, 906 F.2d 1392 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991), we held that "where a defendant has been convicted of a single drug trafficking offense and more than one firearm was involved, a single violation of 924(c)(1) occurs and multiple consecutive sentences may not be stacked to account for each firearm seized." *Id.* at 1399. In *United States v. Moore*, 958 F.2d 310 (10th Cir. 1992), we modified the *Henning* rule and held that "there may be only one firearms *conviction* and sentence imposed for use of firearms during and in relation to an underlying 'crime of violence or drug trafficking crime,' under 924(c)." *Id.* at 314 (emphasis in original). We reasoned that " 'the separate conviction, apart from the

concurrent sentence, has potential adverse collateral consequences that may not be ignored.'" *Id.* at 313 (quoting *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) (emphasis in original)).

In this case, Count I of the indictment charged Sotelo with possession with intent to distribute less that 500 grams of cocaine. Count III charged him under § 924(c)(1) with use of the semi-automatic pistol during and in relation to the crime charged in Count I. Finally, Count V charged him with use of the .357 magnum revolver during and in relation to the crime charged in Count I. Although it was permissible to charge Sotelo separately under Counts III and V, *see Ball,* 470 U.S. at 865, 105 S.Ct. at 1673, and although there was sufficient evidence to support the jury's verdict as to each count, it was a violation of Sotelo's rights under the Double Jeopardy Clause to enter a judgment of conviction on both Counts III and V. We therefore remand to the district court with an order to vacate Sotelo's conviction and sentence on Count V.

*Parra,* 2 F.3d at 1070–1071. It was under these principles that this court vacated one of Lipp's § 924(c)(1) convictions, as the jury found that Lipp had used two separate firearms during and in relation to the same drug trafficking crime of conspiracy to possess with intent to distribute marijuana. *See Lipp,* 1993 WL 544572, at *2.

In *United States v. Callwood,* 66 F.3d 1110 (10th Cir.1995), the Tenth Circuit addressed the double jeopardy potentially implicated in the case at bar. In *Callwood,* the defendant argued that the trial court erred in imposing three consecutive prison terms for his three convictions under 18 U.S.C. § 924(c)(1), alleging that such action violates the Double Jeopardy Clause of the Fifth Amendment. The defendant's claim centered on the undisputed fact that he used only one firearm in the course of the three underlying offenses.

"We have held that consecutive sentences may be imposed for multiple § 924(c) counts if the offenses underlying each 924(c) count do not constitute a single offense for double jeopardy purposes."

*United States v. Sturmoski,* 971 F.2d 452, 461 (10th Cir.1992); *see also United States v. Davis,* 55 F.3d 517, 521 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 249, 133 L.Ed.2d 175 (1996); *United States v. Chalan,* 812 F.2d 1302, 1315–16 (10th Cir. 1987). If the underlying offenses are distinct for double jeopardy purposes, "then two consecutive sentences may be imposed under 924(c) even though the underlying offenses arise out of the same criminal episode, and even though the same gun is paired with each underlying offense." *Sturmoski,* 971 F.2d at 461 (emphasis added) (citations omitted). Consequently, we focus our analysis on the underlying offenses—not on the number of guns used. *See United States v. Dahlman,* 13 F.3d 1391, 1401 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994).[FN4]

FN4. Defendant's reliance on *United States v. Parra,* 2 F.3d 1058 (10th Cir.), *cert. denied,* [510] U.S. [1026], 114 S.Ct. 639, 126 L.Ed.2d 597 (1993), is misplaced. In *Parra,* the defendant was convicted of two separate counts of violating section 924(c) when he used two weapons in the commission of a single drug offense. *Id.* at 1070. We vacated one of his convictions because the underlying offense was the same for both convictions. *Id.* at 1070–71; *see also United States v. Anderson,* 59 F.3d 1323, 1326–27 (D.C.Cir.1995) (en banc); *United States v. Henning,* 906 F.2d 1392, 1399 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991). In contrast, defendant here used a single weapon in multiple drug offenses. Because our focus is on the number of underlying offenses, not the number of guns, *Parra* does not control the outcome of this case.

*Callwood,* 66 F.3d at 1114. Therefore, contrary to the government's suggestion, charging the defendants in the case at bar with separate violations of § 924(c)(1) in two separate counts would not ultimately be futile under double jeopardy principles. In any event, double jeopardy would not preclude the government from charging Smith in two separate counts, even if he could ultimately not be sentenced on the two counts. *Parra,* 2 F.3d at 1071.

Having clarified the double jeopardy issue, the court must now decide what to do with count 82. Ostensibly casting doubt on whether it is inappropriate to charge using and carrying a firearm during and in relation

■■■■■■■

to more than one drug trafficking crime in one count is the Tenth Circuit's recent decision in *Richardson*. The government correctly indicates that the defendant in that case was charged in one count with carrying and using a firearm during and in relation to two separate drug trafficking offenses—possession of methamphetamine and conspiracy. The Tenth Circuit determined that there was insufficient evidence that the defendant carried the firearm during and in relation to the possession charge, but concluded that there was sufficient evidence that he had carried a firearm during and in relation to the drug conspiracy. 86 F.3d at 1548–49. In *Richardson*, however, the defendant apparently made no duplicity challenge similar to the one Smith raises here. The court simply assumes that the Tenth Circuit did not address an issue not raised by the defendant.

Although the government's request to simply provide the jury with a curative verdict form is appealing, the court doubts that such a procedure is appropriate where the defendant raises a timely duplicity challenge prior to trial. A comprehensive verdict form asking a series of questions would resolve any questions regarding the jury's verdict, but would as a practical matter render any duplicity challenges a legal nullity.

The court concludes that Count 82 is duplicitous. However, the relief of dismissal of the count is apparently an inappropriate remedy. The Tenth Circuit has held that "[t]he proper way to attack a duplicitous indictment is by a motion to elect." *United States v. Henry*, 504 F.2d 1335, 1338 (10th Cir.1974) (citing *Harris v. United States*, 190 F.2d 503 (10th Cir.1951)), *cert. denied*, 421 U.S. 932, 95 S.Ct. 1660, 44 L.Ed.2d 90 (1975). *See United States v. Moore*, 811 F.Supp. 112, 116 (W.D.N.Y.1992) (If "there exists a serious risk of jury confusion, the appropriate remedy would be to require the Government to elect among the alternative theories of culpability presented rather than to dismiss that count of the Indictment.").

The court therefore grants Smith's motion in part. Smith's request to dismiss Count 82 is denied. The government is instructed to file within five days of the date of this order, a written document electing the underlying

drug trafficking crime in count 82 it intends to prosecute the defendants.

## One More Problem in Count 82

■■■ Although not specifically argued by the defendant, Count 82 is defective as it charges in the conjunctive and disjunctive by using the phrase "and/or." In *Richardson*, the Tenth Circuit noted that " 'a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive.' " *Richardson*, 86 F.3d at 1547 n. 2 (quoting *United States v. Parrish*, 925 F.2d 1293, 1297 (10th Cir.1991)). The word "or" is stricken as surplusage from the third superseding indictment.

### Merritt's Motion to Dismiss Count/Motion for Evidentiary Hearing (Dk. 259 and 272):

In these motions, the defendant alleges either prosecutorial vindictiveness or outrageous governmental conduct. Specifically, the defendant alleges that a person, at the behest of government agents, have repeatedly contacted the defendant in an effort to induce him to plead guilty. The government categorically denies wrongful conduct. Specifically, the government denies that the person identified by Merritt as a government agent is employed by the government. Based upon the proffer of the government, the court concludes that an evidentiary hearing is not required. The court also concludes that there is insufficient evidence to demonstrate either prosecutorial vindictiveness, *see United States v. Wall*, 37 F.3d 1443, 1447–49 (10th Cir.1994); *United States v. Ailsworth*, 873 F.Supp. 1450, 1462–64 (D.Kan.1994), or outrageous governmental conduct, *see United States v. Holloway*, 906 F.Supp. 1437, 1440 (D.Kan.1995). These motions are denied.

### Motion for continuance of trial (Dk. 330):

Lester Smith seeks a continuance of the setting of the trial in this matter based upon the fact that his counsel is scheduled to represent another defendant in a criminal trial scheduled before Judge Brown during the same time that this matter is scheduled for trial. Lexie Smith is the only defendant who objects to Lester Smith's request for a continuance; the government does not oppose Lester Smith's request. The court

notes that Lexie Smith is currently released on bond.

The court finds that the period of delay resulting from the continuance granted pursuant to this order shall be excludable time as provided for in 18 U.S.C. § 3161(h)(8) in that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

The pretrial status conference in this case is set for September 12, 1996, at 1:30 p.m. in the court's chambers. Trial is set to commence on October 15, 1996, at 1:30 p.m. Counsel shall meet in chambers at 1:00 p.m. on October 15, 1996, prior to commencement of selection of the jurors.

## Government's Motion to compel discovery (Dk. 167):

On March 19, 1996, based upon its understanding of the omnibus report, the government filed a motion to compel discovery from the defendants. Lexie Lee Smith and Lori Smith filed responses to that motion. Lester Smith filed a motion to join in those responses.[13]

It was and is the court's understanding that counsel are going to attempt to resolve this matter among themselves without further court intervention. In light of that understanding, the court denies this motion as moot. In the event that counsel are unable to reach an agreement, the government may file a renewed motion to compel discovery prior to September 9, 1996.

### Closing Remarks

In this memorandum and order, the court has taken great pains to decide or specifically take under advisement all of the pending motions filed to date. So that this case is postured to proceed to trial on October 15, 1996, within ten days of the date this memorandum and order is filed, any party believing that any pending motion has not been disposed of or specifically taken under advisement in this memorandum and order and/or in the court's April 5, 1996, memorandum and order, shall file a pleading indicating which motion(s) have not been addressed by the court.

IT IS THEREFORE ORDERED that the following motions are denied as moot in light of the court's April 5, 1996, memorandum and order:

Motion for Bill of Particulars (Dk. 298).

Motion for disclosure of confidential informant(s) and incorporated memorandum of law (Dk. 299).

Motion for grand jury transcript (Dk. 304).

Motion pursuant to F.R.E. Rule 803(24) (Dk. 306).

Motion for *James* hearing (Dk. 308).

Motion for disclosure of information regarding prior or subsequent bad acts (Dk. 309).

Motion for grand jury selection information (Dk. 310).

IT IS FURTHER ORDERED that Lexie Smith's "Motion to quash government's consolidated responses to defendant's pretrial motions" (Dk. 328) is denied.

IT IS FURTHER ORDERED that the defendants' motions for severance (Dks. 244, 300 and 323) are denied.

IT IS FURTHER ORDERED that Lexie Smith's "Motion to strike surplusage from indictment" (Dk. 302) is denied.

IT IS FURTHER ORDERED that Lexie Smith's "Motion Motion for discovery and inspection" (Dk. 303) is denied as moot.

IT IS FURTHER ORDERED that Lexie Smith's Standing Objection to Continuance Motions (Dk. 305) and his Standing objections to any continuance in the case and to any further superseding of indictment (Dk. 243) are noted but denied as set forth in the body of this opinion.

IT IS FURTHER ORDERED that Lexie Smith's "Motion to compel retention of notes, logs, recordings, reports and statements of government agents" (Dk. 307) is granted in part as set forth in the body of this opinion.

IT IS FURTHER ORDERED that Lexie Smith's "Motion to compel the disclosure of existence and substance of promises of im-

---

**13.** That request is granted.

munity, leniency or preferential treatment" (Dk. 311) is denied as moot.

IT IS FURTHER ORDERED that Lori Smith's "Motion for extension of time to file pretrial motions" (Dk. 284) is denied as moot.

IT IS FURTHER ORDERED that Lexie Smith's "Motion to quash counts 22, 23 and 24 of the second superseding indictment" (Dk. 241) is denied as moot.

IT IS FURTHER ORDERED that Lexie Smith's Motion for "Adoption of previously filed pre-trial motions" (Dk. 242) is granted as set forth in the body of this opinion.

IT IS FURTHER ORDERED that Lexie Smith's "Motion to compel discovery" (Dk. 195) is denied as moot.

IT IS FURTHER ORDERED that Lexie Smith's "Motion to quash third superseding indictment count 82" (Dk. 312) is granted in part. Lexie Smith's motion to dismiss count 82 is denied. However, within five days of the date of this order the government must file a written document electing the underlying drug trafficking crime in count 82 it intends to prosecute the defendants.

IT IS FURTHER ORDERED that Lester Smith's "Motion to join in responses [to government's motion to compel discovery]" (Dk. 208) is granted.

IT IS FURTHER ORDERED that Merritt and Quary's motions to join in the motions filed by codefendants (Dk. 285 and 239) are granted as set forth in the body of this opinion.

IT IS FURTHER ORDERED that Merritt's Motion to Dismiss Count/Motion for Evidentiary Hearing (Dk. 259 and 272) are denied.

IT IS FURTHER ORDERED that the Government's Motion to compel discovery (Dk. 167) is denied as moot.

IT IS FURTHER ORDERED that Lester Smith's Motion for continuance of trial (Dk. 330) is granted based upon the court's finding that the additional time outweighs the interest of the public and the defendants in a speedy trial as set forth in 18 U.S.C. § 3161(h)(8). The pretrial status conference in this case is set for September 12, 1996, at 1:30 p.m. in the court's chambers. Trial is set to commence on October 15, 1996, at 1:30 p.m. Counsel shall meet in chambers at 1:00 p.m. on October 15, 1996, prior to commencement of selection of the jurors.

IT IS FURTHER ORDERED that the following motions are taken under advisement until trial:

Motion in Limine to Exclude Tapes (Dk. 144); Motion in limine to exclude use of audio tapes and transcripts (Dk. 297); Motion for daily Transcript (Dk. 153); and Lori Smith's first motion in limine (Dk. 154).