**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Elliston CALLWOOD, also known**
**as Michael Small, Defendant–**
**Appellant.**

No. 94–2134.

United States Court of Appeals,
Tenth Circuit.

Sept. 14, 1995.

---

Todd Hotchkiss, Timothy M. Padilla & Associates, P.C., Albuquerque, NM, for appellant.

Tara C. Neda, Assistant United States Attorney (John J. Kelly, United States Attorney for the District of New Mexico, with her on the brief), Albuquerque, NM, for appellee.

Before TACHA, SETH, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

A jury convicted defendant Elliston Callwood of six drug-related offenses: one count of conspiracy to possess illegal narcotics with the intent to distribute in violation of 21 U.S.C. § 841; one count of conspiring to distribute marijuana, as prohibited by 21 U.S.C. § 846; one count of maintaining an establishment for the purpose of distributing illegal narcotics in violation of 21 U.S.C. § 856; and three counts of possessing a firearm to facilitate drug trafficking in contravention of 18 U.S.C. § 924(c)(1). Defendant now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

On October 28, 1992, a number of Albuquerque police officers arrived at a home on Iron Street planning to execute a search warrant. Two undercover officers knocked

on the door and asked if they could purchase marijuana. The occupant, Jason Rupley, allowed the officers in the house, where he sold the marijuana to the officers.

The undercover officers then revealed their identities. They retrieved the uniformed officers, who were waiting outside, to execute the search warrant. During the search, defendant knocked on the door. When one of the undercover officers answered the door, defendant attempted to push past the officer and enter the premises. The officer stopped defendant at the door, and defendant pulled out a gun. After some discussion, a struggle ensued, and the officers eventually wrestled the gun away from defendant.

Defendant identified himself by one of his aliases, "Michael Small." The police searched defendant and discovered a telephone card with the name "Michael Small" on it. Later, they connected the telephone number with a house on Eighth Street.

In the meantime, one of the Iron Street residence's occupants, Rupley, was cooperating with police. He stated that Small had hired him to sell marijuana in exchange for free rent and a portion of the drug sales. Rupley told the officers that he thought Small kept the marijuana at Small's house. Furthermore, Rupley said that Small always carried a gun when transacting drug business.

Based on this information, a group of officers headed to the Eighth Street home. Small's girlfriend was present at the home. The officers informed her that Small had been arrested, and she invited the officers inside. While in the home, the officers noticed marijuana seeds.

One officer then left the home to request a search warrant for the Eighth Street address. A New Mexico state judge granted the request for the warrant. The officers then executed a search, which turned up marijuana, packaging material, and cash.

A grand jury indicted defendant on nine counts, three of which were severed before trial and do not form part of this appeal. A jury convicted defendant on the other six counts. Defendant now appeals.

## II. DISCUSSION

### A.

■ Defendant alleges that the search of his Eighth Street home violates the Fourth Amendment because the face of the warrant indicates that the search was to take place during the daytime, but the police executed the search after 10 p.m.[1] "On appeal from the denial of a motion to suppress evidence, we review the factual determinations made by the district court for clear error, and we view the evidence in the light most favorable to the government." *United States v. Ramirez*, 63 F.3d 937, 940 (10th Cir.1995). We review de novo, however, the ultimate question of whether the search comported with the Fourth Amendment. *Id.; United States v. Kopp*, 45 F.3d 1450, 1452 (10th Cir.1995).

Although the search was conducted by state officials, the warrant must nevertheless comport with the constitutional requirements of the Fourth Amendment. *See United States v. Morehead*, 959 F.2d 1489, 1497 (10th Cir.), *aff'd on other grounds sub nom. United States v. Hill*, 971 F.2d 1461 (10th Cir.1992) (en banc); *United States v. Keene*, 915 F.2d 1164, 1167 (8th Cir.1990), *cert. denied*, 498 U.S. 1102, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991).[2] In conducting the

---

1. Defendant also contends that the search violated state law. Defendant, however, did not raise this issue before the trial court. Consequently, it is waived on appeal except for a review for plain error resulting in manifest injustice. *See United States v. Lira–Arredondo*, 38 F.3d 531, 533 n. 2 (10th Cir.1994); *United States v. Lewis*, 24 F.3d 79, 82 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994). Because "[w]hen a search is state in character, 'the warrant and affidavits need only conform to federal constitutional requirements in order for the resulting evidence to be admissible in a federal

prosecution,'" *United States v. Morehead*, 959 F.2d 1489, 1497 (10th Cir.1992) (quoting *United States v. Gibbons*, 607 F.2d 1320, 1325 (10th Cir.1979) (citations omitted)), we find no such error from any state statutory violation here.

2. Defendant also argues that the search warrant violates Fed.R.Crim.P. 41(c). But Rule 41 governs procedure in applications made by *federal* officers, not state officers, and therefore does not govern this case. *See* Fed.R.Crim.P. 41(a) (setting out the procedure to follow "[u]pon the

Fourth Amendment inquiry, we recognize that a nighttime search is particularly intrusive. *See Fludd v. United States Secret Serv.,* 771 F.2d 549, 553 (D.C.Cir.1985) (per curiam); *Gibbons,* 607 F.2d at 1326.

▮ When reviewing a warrant, "we read together all properly incorporated or referenced components of the warrant, including the attached application and affidavit." *United States v. Occhipinti,* 998 F.2d 791, 799 (10th Cir.1993). When the officers asked for the warrant, they approached the judge's home at 1:30 a.m. The affidavit clearly "request[s] that the search be allowed immediately," and the search warrant explicitly makes the affidavit part of the warrant. Based on this information, the district court made a factual finding that the judge authorized a nighttime search. Consequently, under these circumstances, we find no error with the time of the search. *Cf. United States v. Carhee,* 27 F.3d 1493, 1498 (10th Cir.1994) (concluding that, although the search warrant did not explicitly state that the search could occur at night, no error occurred because the judge, in fact, authorized a nighttime search).

▮ Defendant also claims that his motion to suppress should have been granted because the officer was not given an oath when requesting the search warrant and his "testimony" was not recorded.[3] Having reviewed the record, however, we conclude that defendant has not shown that the officer offered any "testimony" when requesting the search warrant. The officer stated that he explained the facts to the judge. But there is no indication that the judge relied on anything other than the application for the search warrant and the supporting affidavits—thus making clear that the officer did not provide any oral "testimony." Further-

more, even assuming *arguendo* that a constitutional violation occurred, exclusion of the evidence would not be the appropriate remedy. The evidence was "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate[,]" and is thus subject to the good faith exception to the exclusionary rule. *United States v. Leon,* 468 U.S. 897, 913, 104 S.Ct. 3405, 3415–16, 82 L.Ed.2d 677 (1984); *see also United States v. Shields,* 978 F.2d 943, 946–47 (6th Cir.1992). Accordingly, the motion to suppress was properly denied.

## B.

Defendant next contends that the district court erroneously refused to recognize his right to self-representation. We review the district court's action for an abuse of discretion. *United States v. Merchant,* 992 F.2d 1091, 1095 (10th Cir.1993); *United States v. Johnson,* 961 F.2d 1488, 1490 (10th Cir.1992).

▮ Under the Sixth Amendment, a criminal defendant has a constitutional right to waive counsel and represent herself. *Faretta v. California,* 422 U.S. 806, 834–36, 95 S.Ct. 2525, 2540–42, 45 L.Ed.2d 562 (1975); *Leacock v. Henman,* 996 F.2d 1069, 1071 (10th Cir.1993); *United States v. Willie,* 941 F.2d 1384, 1388 (10th Cir.1991), *cert. denied,* 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992). To invoke this right, however, a defendant must clearly and unequivocally assert his intention to represent himself, *United States v. McKinley,* 58 F.3d 1475, 1479–80 (10th Cir.1995); *United States v. Reddeck,* 22 F.3d 1504, 1510 (10th Cir.1994), and must do so in a timely manner, *United States v. Nunez,* 877 F.2d 1475, 1478 (10th Cir.), *cert. denied,* 493 U.S. 981, 110 S.Ct. 514, 107 L.Ed.2d 515 (1989).

request of a federal law enforcement officer"); *United States v. Bieri,* 21 F.3d 811, 816 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994); *Gibbons,* 607 F.2d at 1326.

Because of this distinction, defendant's citation to *United States v. Tedford,* 875 F.2d 446 (5th Cir.1989), is inapposite. In *Tedford,* the court found that the use of federal officers to search the defendant's home subjected the search to scrutiny under federal law. *Id.* at 448. Accordingly, the court applied federal law. *Id.* It found that the search violated Rule 41, and it did

not examine whether the search was unconstitutional. *Id.* at 451. In contrast, here the search was conducted by state officials. We are therefore faced only with the constitutional question, not the federal procedural issue.

3. Defendant makes similar arguments regarding the invalidity of the search under state law and under Fed.R.Crim.P. 41. As we note in footnotes 1 and 2, though, these issues are not properly before us.

■ In this case, defendant never made an unequivocal request for self-representation before the court. At trial, defendant raised a number of complaints concerning his counsel. Defendant's main grievance was that counsel was not asking witnesses the questions that defendant wanted asked. He therefore informed the court he "would prefer for [counsel] not to represent [defendant] or at least the right to question the [witness himself]." He stated a number of times that he did not believe he was receiving "proper representation."

■ These statements do not qualify as an unequivocal request for self-representation. *Cf. United States v. Treff,* 924 F.2d 975, 979 (10th Cir.) (holding that defendants should not be allowed to play a "cat and mouse game" regarding their right to self-representation), *cert. denied,* 500 U.S. 958, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991). At most, defendant requested the right to cross-examine the witnesses. Of course, there is no right to a "hybrid" representation in which defendant can question the witnesses while continuing to retain counsel. *See McKinley,* 58 F.3d at 1480–81. Defendant never made any other statement regarding his desire for self-representation. Accordingly, we hold that the district court did not err when it did not substitute defendant as counsel in his case.

### C.

Finally, defendant argues that the trial court erred in imposing three consecutive prisons terms for his three convictions under 18 U.S.C. § 924(c)(1), alleging that this action violates the Double Jeopardy Clause of the Fifth Amendment. His claim centers on the undisputed fact that he used only one firearm in the course of the three underlying offenses.

■ "We have held that consecutive sentences may be imposed for multiple 924(c) counts if the offenses underlying each 924(c) count do not constitute a single offense for double jeopardy purposes." *United States v. Sturmoski,* 971 F.2d 452, 461 (10th Cir.1992); *see also United States v. Davis,* 55 F.3d 517, 521 (10th Cir.1995), *petition for cert. filed,* (U.S. July 31, 1995) (No. 95–5445); *United States v. Chalan,* 812 F.2d 1302, 1315–16 (10th Cir.1987). If the underlying offenses are distinct for double jeopardy purposes, "then two consecutive sentences may be imposed under 924(c) even though the underlying offenses arise out of the same criminal episode, and *even though the same gun is paired with each underlying offense.*" *Sturmoski,* 971 F.2d at 461 (emphasis added) (citations omitted). Consequently, we focus our analysis on the underlying offenses—not on the number of guns used. *See United States v. Dahlman,* 13 F.3d 1391, 1401 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994).[4]

■ We therefore examine whether the imposition of punishment for each of these underlying offenses violates the Constitution. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *see also United States v. Halper,* 490 U.S. 435, 450, 109 S.Ct. 1892, 1902–03, 104 L.Ed.2d 487 (1989). In assessing defendant's double jeopardy claim, we first look to legislative intent. *See Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411–12, 85 L.Ed.2d 764 (1985); *Morehead,* 959 F.2d at 1506. If the legislative intent is unclear, we apply the "same elements" test enunciated in

---

4. Defendant's reliance on *United States v. Parra,* 2 F.3d 1058 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993), is misplaced. In *Parra,* the defendant was convicted of two separate counts of violating section 924(c) when he used two weapons in the commission of a single drug offense. *Id.* at 1070. We vacated one of his convictions because the underlying offense was the same for both convictions. *Id.* at 1070–71; *see also United States v.* Anderson, 59 F.3d 1323, 1326–27 (D.C.Cir.1995) (en banc); *United States v. Henning,* 906 F.2d 1392, 1399 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991). In contrast, defendant here used a single weapon in multiple drug offenses. Because our focus is on the number of underlying offenses, not the number of guns, *Parra* does not control the outcome of this case.

*Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *United States v. Johnson,* 977 F.2d 1360, 1376 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993); *United States v. Lanzi,* 933 F.2d 824, 825 (10th Cir.1991).

A searching analysis of the statutes is not necessary in this case, however, because this court has previously found that Congress intended each offense committed by defendant to impose a separate punishment. In *United States v. Abreu,* 962 F.2d 1425 (10th Cir.), *aff'd on other grounds,* 962 F.2d 1447 (10th Cir.1992) (en banc), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 2405, 124 L.Ed.2d 630 (1993), we analyzed the relationship between sections 841 and 846. *Id.* at 1433–34. We determined that a jury could find a defendant guilty of both crimes without offending the Double Jeopardy Clause. *Id.* Furthermore, in *Sturmoski* we were faced with the question of whether convicting a person of both sections 856 and 846 violated the Double Jeopardy Clause. *Sturmoski,* 971 F.2d at 461. We determined that no constitutional violation occurred.[5] *Id.*

 Thus, a conviction under each of the predicate offenses to section 924(c) does not violate the Fifth Amendment. Consequently, neither does separate convictions under 924(c).[6]

## III. CONCLUSION

We find no error in the execution of the search warrant. In addition, we conclude that defendant's constitutional right to self-representation was not curbed, nor was his protection against double jeopardy abridged.

We therefore **AFFIRM** the judgment of the district court.

---

5. We reached this holding because section 856 "goes beyond the proscriptions found in other statutes relating to possession and manufacture of controlled substances and actually criminalizes a particular defendant's use of property." *Sturmoski,* 971 F.2d at 461–62. This logic, of course, also inevitably leads to the conclusion that a conviction of both sections 856 and 841 do not violate the Double Jeopardy Clause. *See United States v. Church,* 970 F.2d 401, 407 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1009, 122 L.Ed.2d 157 (1993).

6. In his brief, defendant twice claims that his convictions violate the Eighth Amendment but makes no separate legal or factual arguments to this effect. A litigant who mentions a point in passing but fails to press it "by supporting it with pertinent authority ... forfeits the point." *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990) (citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992). We therefore will not examine this issue.